

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                       )
LANCE McDERMOTT,                       )      No. C05-0860RSL
                                       )
                    Plaintiff,         )
        v.                             )
                                       )      ORDER GRANTING DEFENDANT'S
UNITED STATES POSTAL SERVICE,          )      THIRD MOTION TO DISMISS
                                       )
                    Defendants.        )
_____)

        This matter comes before the Court on the "Defendant's Motion to Dismiss

Pursuant to Rule 12(b)(2) and Rule 12(b)(6)."  Dkt. # 49.  In the version of his complaint filed

on August 15, 2005 (Dkt. # 5), plaintiff alleges that the United States Postal Service has violated

governing statutes, rules, regulations, manuals, and policies and apparently seeks a declaration to

that effect.[1]  Defendant argues that the complaint must be dismissed because the Court lacks

subject matter jurisdiction under the Postal Reorganization Act ("PRA"), 39 U.S.C. §§ 101, *et

seq.*,  plaintiff's claims were waived or finally resolved through the administrative grievance

_____

        [1]  Pursuant to Fed. R. Civ. P. 15(a), plaintiff was entitled to amend his complaint once as a matter
of course prior to the time defendant filed its first motion to dismiss.  This he did by submitting the
"Pleading Title: 890 -- Other Statutory Actions" on August 15, 2005.  This version of the complaint
became the operative pleading in this matter, superseding the original complaint and exhibits filed on May
9, 2005.  Plaintiff's subsequent attempts to amend or supplement his complaint (see Dkt. # 12, 13, and
31) are ineffective because plaintiff did not obtain leave of Court or the written consent of defendant as
required by Rule 15(a).

ORDER GRANTING DEFENDANT'S
THIRD MOTION TO DISMISS

1   process, and plaintiff lacks standing to raise the claims in his complaint.

2   In Whitman v. Dep't of Transp., __ U.S. __, 126 S. Ct. 2014 (2006), the Supreme

3   Court was asked to determine whether an employee of the Federal Aviation Administration

4   could pursue remedies for alleged constitutional violations, including a civil suit in federal court,

5   beyond those set forth in the Civil Service Reform Act of 1978 ("CSRA").  The Court ultimately

6   remanded the matter to the Ninth Circuit to determine where plaintiff's claims fit within the

7   statutory scheme: only then could the Court properly analyze whether the applicable provisions,

8   considered as a whole, evinced a congressional intent to preclude judicial review of such claims.

9   Whitman, 126 S. Ct. at 2015-16.  See also United States v. Fausto, 484 U.S. 439 (1988) (noting

10  that "the presumption favoring judicial review is not to be applied in the strict evidentiary sense,

11  but may be overcome whenever the congressional intent to preclude review is fairly discernible

12  in the statutory scheme.") (internal quotation marks omitted).

13  In the case at hand, plaintiff has asserted a vast array of claims, ranging from

14  unauthorized policy-making on the part of Postal Service supervisors to the misuse of

15  monitoring equipment in violation of employee privacy rights.  Before attempting to fit each and

16  every one of plaintiff's claims into the statutory framework of the PRA, as taught by Whitman,

17  the Court will first analyze plaintiff's standing to raise the claims asserted in his complaint.

18  Standing is "an essential and unchanging part of the case-or-controversy requirement of Article

19  III."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The primary issue is whether "a

20  party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of

21  that controversy."  Dream Palace v. County of Maricopa, 384 F.3d 990, 999 (9th Cir. 2004)

22  (quoting Sierra Club v. Morton, 405 U.S. 727, 731 (1972)).  For plaintiff to bring a claim on his

23  own behalf, he must show that he has suffered some actual or threatened injury as a result of

24  defendants' conduct and that a decision in plaintiff's favor is likely to redress the injury.  See

25  Rivas v. Rail Delivery Serv., Inc., 423 F.3d 1079, 1082 n.1 (9th Cir. 2005).

26  With regards to almost every allegation and claim raised in the August 15, 2005,

ORDER GRANTING DEFENDANT'S
THIRD MOTION TO DISMISS                    -2-

complaint, plaintiff has failed to demonstrate actual or threatened injury.  Plaintiff has the burden of demonstrating that he has suffered an injury that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560 (internal citations and quotation marks omitted).  Claims asserted on behalf of third parties, such as plaintiff's allegations regarding the procedures used to investigate and terminate Ms. Alley, the firing of the Postal Police, the violation of employee privacy rights, and the car burglaries in the parking lot, do not satisfy this requirement.  Plaintiff suffered no cognizable injury from any of these events.  Nor does a generalized concern that defendant's alleged failure to tell the truth and comply with security and procedural rules will adversely affect the health and well-being of the postal system justify a lawsuit in federal court.  Dep. of Lance McDermott at 91-92.[2]  The Supreme Court has found that such concerns are too abstract and indefinite in nature to give rise to standing.  See e.g., Lujan, 504 U.S. at 572-78 (injury to interest in seeing that certain procedures are followed does not confer standing); L. Singer & Sons v. Union Pacific R. Co., 311 U.S. 295, 303 (1940) (injury to interest in seeing that the law is obeyed is too abstract to confer standing); Perkins v. Lukens Steel Co., 310 U.S. 113, 125 (1940) (plaintiffs lack standing because they failed to show injury to "a particular right of their own, as distinguished from the public's interest in the administration of law").  To the extent plaintiff is concerned that he will be subjected to unfair termination procedures or have his car burglarized in the future, he has not shown a "credible threat" that he will suffer the harm that has allegedly occurred to others.  Kolender v. Lawson, 461 U.S. 352, 355 n. 3 (1983).  See also City of Los Angeles v. Lyons, 461

---

[2]  Plaintiff's objections to the use of his deposition transcript in this proceeding are overruled.  Contrary to plaintiff's assertion, he did not use reasonable diligence to obtain counsel to represent him at his deposition.  There is no evidence that plaintiff contacted or attempted to retain a private attorney upon receipt of the notice of deposition.  The letter plaintiff apparently sent to the Department of Justice requesting representation (Response at Ex. E, Dkt. # 52), seems patently unreasonable given the circumstances of this case.  Plaintiff offers no legal support for his request or any reason why the United States would fund or subsidize his lawsuit against the Postal Service.  Nor does the timing of defendant's response to plaintiff's interrogatories justify or require the exclusion of plaintiff's deposition testimony.

ORDER GRANTING DEFENDANT'S
THIRD MOTION TO DISMISS                    -3-

U.S. 95, 108, 111 (1983) (plaintiff bears the burden of establishing a "sufficient likelihood" of injury); Murphy v. Hunt, 455 U.S. 478, 482 (1982) (a "mere physical or theoretical possibility" that the challenged action will injure plaintiff in the future is insufficient).  The threat of future harm to plaintiff is not actual or imminent, is based upon strings of contingencies (some or all of which may never happen), and is too hypothetical to confer standing to challenge defendant's actions.

The only concrete and particularized injury suffered by plaintiff appears to be the loss of the $15 he paid for a replacement security badge and the 15 minutes of leave time he used while waiting for the badge to be processed.  Dep. of Lance McDermott at 91-93.  Plaintiff alleges that these losses are the result of an unauthorized rule change and it appears that they could be redressed through this litigation.  Standing to assert a claim based on these injuries does not, however, confer jurisdiction over the other claims for which plaintiff has demonstrated no injury.  Rivas, 423 F.3d at 1083.  Thus, the Court need consider defendant's jurisdictional argument under the PRA with regards only to defendant's promulgation of replacement fee rules that actually cost plaintiff money and time.

Plaintiff alleges that defendant improperly promulgated a regulation in the Administrative Support Manual ("ASM") authorizing a charge of no more than $15 whenever an electromechanical access control badge is lost.  Complaint at 8-10.  Plaintiff asserts that the procedures used to revise ASM 277.72(c) violated Title 39, certain regulations and manuals, and the governing collective bargaining agreement.  As recently noted by the Supreme Court, 28 U.S.C. § 1331 grants jurisdiction to federal courts over all civil actions arising under the laws of the United States.  Whitman, 126 S. Ct. at 2015.  The question before the Court is whether Congress intended to overcome that grant of jurisdiction where plaintiff is challenging the procedures used to revise employee-related regulations.

The governing statute is the PRA, 39 U.S.C. §§ 101 et seq.  Section 401 of the PRA grants the Postal Service the authority to sue and be sued in its own name and Section 409

1  gives original, but not exclusive, jurisdiction over those suits to the federal district courts.

2  Nevertheless, the Court finds that Congress intended to preclude judicial review of the

3  employee-related rule-making procedures at issue here.  Through the PRA, Congress provided

4  the Postal Service with the independence and autonomy necessary to carry out its basic function,

5  namely "to provide postal services to bind the Nation together through the personal, educational,

6  literary, and business correspondence of the people."  39 U.S.C. § 101(a).  The Postal Service is

7  authorized to "adopt, amend, and repeal such rules and regulations as it deems necessary to

8  accomplish the objectives of this title" (39 U.S.C. § 401(2)) and to direct employees in the

9  performance of their official duties (39 U.S.C. § 1001(e)(1)).  The Postal Service is specifically

10  exempted from most federal laws dealing with "contracts, property, works, officers, employees,

11  budgets, or funds."  39 U.S.C. § 410(a).  See also Bacashihua v. Merit Sys. Protection Bd., 811

12  F.2d 1498, 1501 (Fed. Cir. 1987) ("The PRA established the Postal Service as an independent

13  establishment of the executive branch with very limited application of federal employee law.").

14           The only relevant employment-related laws Congress imposed upon the Postal

15  Service are Chapter 7 of the National Labor Relations Act, 29 U.S.C. § 151 et seq.,[3] and

16  Chapters 73 and 75 of the CSRA, 5 U.S.C. § 7301 et seq., and § 7501 et seq.  See 39 U.S.C.

17  §§ 410(b), 1005(a)(1), and 1209(a).  Although Congress provided Postal Service employees with

18  notice and review rights for significant adverse employment actions taken for the "efficiency of

19  the service" (5 U.S.C. § 7501 et seq.), it chose not to incorporate provisions of the CSRA that

20  would have allowed Postal Service employees to challenge lesser employment actions (5 U.S.C.

21  § 2301 et seq.) or significant adverse employment actions taken in response to unacceptable job

22  performance (5 U.S.C. § 4301 et seq.).  Given that the PRA, based on the specific inclusions and

23  exclusions described above, deprives employees of the right under Chapter 43 of the CSRA to

24

25       [3] If, under the authority granted in 39 U.S.C. § 1209(a), a collective bargaining agreement is

26  negotiated with a labor organization representing Postal Service employees, the terms of that agreement
    govern the employment relationship.  39 U.S.C. § 1005(a); 39 C.F.R. § 211.4.

ORDER GRANTING DEFENDANT'S
THIRD MOTION TO DISMISS              -5-

appeal momentous agency action such as a reduction in grade, it seems implausible that Congress would want to allow employees to file lawsuits over procedural disputes and/or the amount the Postal Service charges to replace a lost security badge.  See Harper v. Frank, 985 F.2d 285, 290 (6th Cir. 1993) (". . . it would be illogical to assume that Congress intended to grant greater rights to an employee affected by a less serious personnel action than the Supreme Court has found attaches to a more serious adverse action.").  Indeed, Congress specifically exempted the Postal Service from Chapters 5 and 7 of the Administrative Procedure Act, which would otherwise subject Postal Service actions to judicial review.  39 U.S.C. § 410(a); Pitney Bowes, Inc. v. U.S. Postal Serv., 27 F. Supp.2d 15, 20-21 (D.D.C. 1998).

Congress designed the PRA "to free postal management from entangling red tape and to concentrate management authority so as to provide an efficient and economical postal system."  Governors of the U.S. Postal Serv. v. U.S. Postal Rate Comm'n, 654 F.2d 108, 109 (D.C. Cir. 1981) (citing H.R. Rep. No. 91-1104, at 5-6 (1970), as reprinted in 1970 U.S.C.C.A.N. 3649, 3654-3655 and S. Rep. No. 91-912, at 4-5 (1970)).  In light of this purpose, the very few instances in which Congress authorized judicial review of Postal Service actions (see 39 U.S.C. § 3628), and the inapplicability of other statutes that might have authorized judicial review, the Court finds that the text and structure of the PRA reveal a congressional intent to preclude judicial review of plaintiff's objections to the manner in which ASM 277.72 was revised and/or the substance of that regulation.[4]

---

[4]  The Court does not mean to imply that Congress intended to leave Postal Service employees to the unfettered whim of their employer.  Unlike other federal employees, Postal Service employees may be represented by unions that bargain collectively with the Service.  39 U.S.C. § 1201 et seq.  Plaintiff's employment is governed by a collective bargaining agreement ("CBA") which, pursuant to the PRA, defines the terms and conditions under which plaintiff is employed.  See 39 U.S.C. §§ 1001(e) and 1005(a).  The CBA provides grievance and arbitration procedures that apply to plaintiff's challenge to the replacement fee regulation: in fact, plaintiff filed a number of grievances related to the security badge policy.  In addition, the bylaws adopted by the Board of Governors provide an alternative avenue through which employees can report violations of laws or regulations to the General Counsel in Washington, D.C. See 39 C.F.R. § 447.61.

ORDER GRANTING DEFENDANT'S
THIRD MOTION TO DISMISS                     -6-

1           For all of the foregoing reasons, defendant's motion to dismiss is GRANTED.

2    The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

3

4

5        DATED this 28th day of August, 2006.

6

7    *MrS Lasnik*

8        Robert S. Lasnik
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANT'S
THIRD MOTION TO DISMISS     -7-